IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05 CR 50055 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Quincy Hubbard, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant's motion for compassionate release [102, 112] is denied.

**STATEMENT-OPINION**

On March 15, 2005, the narcotics unit of the Winnebago County Sheriff's Office executed a search warrant at defendant Quincy Hubbard's residence in Rockford.[1] Thereafter, defendant was charged with possession with intent to distribute 500 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (count one); possession of a firearm by a prohibited person, in violation of 18 U.S.C. 922(g)(1) (count two); and possession of a firearm during and in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. 924(c).

On June 15, 2006, defendant entered a change of plea on counts one and two. On October 13, 2006, this court sentenced him to 294 months' imprisonment on count one, and 120 months' imprisonment on count two, to be served concurrently. This court also imposed a term of five years' supervised release on count one, and three years on count two. On appeal, defendant challenged a previously-litigated motion to suppress, but his appeal was denied.

On November 2, 2011, defendant filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 750 to the Sentencing Guidelines. This court granted the motion and reduced defendant's term by 32 months on count one, down to 262 months.

On March 30, 2016, defendant filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Sentencing Guidelines. On March 30, 2017, this court denied the motion.

On December 16, 2019, defendant filed a motion for resentencing pursuant to § 404 of the First Step Act. Pursuant to General Order 19-0003, the Federal Defender was appointed to represent defendant. On February 25, 2020, defendant voluntarily withdrew his motion for resentencing.

On July 23, 2021, defendant filed a 14-page, typewritten, *pro se* motion for compassionate release [102], which also included several exhibits. He alleged that the conditions at FCI Berlin, where he is housed,

---

[1] These background facts and procedural history, which are undisputed, are taken from the government's response brief [113 at 1-2].

are unsanitary and otherwise insufficient to protect him adequately from the "high risk" of contracting COVID-19. *Id.* at 8. On August 6th, defendant filed a two-page amendment [107] referring to a recent expungement of his 1996 drug conviction. On August 10th, defendant filed a five-page second amendment in which he referred to a recent COVID-19 outbreak at his facility.[2] This court appointed the Federal Defender to represent defendant. Counsel filed a one-page supplement [112] stating that he "has reviewed the pro se motion and at this time has nothing to add to Mr. Hubbard's motion." On October 8, the government filed a response brief [113] opposing the request for compassionate release. Defendant currently has a projected release date of March 18, 2024.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion filed by the director of the Bureau of Prisons ("BOP") or, as here, based on a motion filed directly by the defendant if the defendant has first asked the warden to file such a motion and fully exhausted his administrative remedies or has waited 30 days after making such a request, whichever comes first. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, "a court may release a prisoner only if, 'after considering the factors set forth in section 3553(a),' it finds extraordinary and compelling reasons" to reduce the sentence. *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). The Sentencing Commission has not yet amended the policy statement applicable to compassionate release motions filed directly by prisoners. Nevertheless, "the Commission's analysis [of what factors the court can consider when determining 'extraordinary and compelling reasons' for release] can guide [court] discretion without being conclusive." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

The first issue to be addressed is the exhaustion requirement. Because the government has conceded that defendant met this requirement [*see* 113 at p. 8], the court need not further consider it. *Id.* at 1179 (failure to exhaust is an affirmative defense that may be waived if not raised by the parties).

The next issue is whether defendant has shown any "extraordinary and compelling" reasons for early release. The primary reason offered by defendant is his claim that he faces a high risk of death from COVID-19. In his initial motion, he complains about unsanitary conditions at his facility, noting (among other things) that there are no alcohol-based hand sanitizers and that soap must be purchased at the commissary and also that there is no separate area for sick inmates to self-quarantine. [102 at 2.] In his second amendment, he states that, as of July 30, 2021, FCI Berlin was placed on lockdown because three inmates tested positive for COVID-19 and that, as of August 5th, this number had risen to 14 positive inmates or staff members. [108 at p. 1.] He characterizes this increase as an "outbreak," and states that it the second one at the facility, the first one having taken place in April and May of 2021 when over 200 inmates and staff tested positive. *Id.* He also asserts that the delta variant "in on the rise" around the world. He acknowledges that he is fully vaccinated, but expresses concern that less than half of the inmates, and only 38% of the staff, at his facility are fully vaccinated. He alleges that those infected with the virus receive sub-par care and are put in solitary conferment with other infected inmates.

In response, the government argues that defendant's COVID-19 concerns do not rise to the level to constitute an extraordinary and compelling reason. This court agrees. First, as for defendant's health, he is 45 years old and, by his own admission, has no conditions or concerns that place him at a greater risk for

---

[2] This second amendment was apparently filed (or docketed) twice. *See* [108 & 109].

COVID-19 complications.[3] [102 at 10.] Second, defendant has been fully vaccinated since January 2021. [113 at 9.] This fact makes it difficult, if not impossible, for him to rely on COVID-19 concerns as an extraordinary and compelling reason. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("for the vast majority of prisoners, the availability of a vaccine *makes it impossible* to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release") (emphasis added); *United States v. Ugbah*, 4 F.4th 595, 597 (suggesting that it would be abuse of discretion to grant compassionate release to a prisoner based on COVID-19 risks when the prisoner has access to vaccines). Third, as for the vaccination rates at his facility, the BOP website states that 151 staff and 596 inmates are currently fully vaccinated. By this court's calculation, based on there being 777 inmates at the facility, approximately 76% of the inmates are now fully vaccinated. This rate is higher than the vaccination rate for the non-prison population in the United States. Fourth, as for the number of infections and deaths at the facility, the BOP website states that (as of November 5th) no inmates and only two staff members are currently positive. More broadly, since the pandemic began, 193 inmates and 31 staff have had the virus, but there have apparently been no deaths from any of these cases. Taken as a whole, these numbers suggest that this facility is now effectively managing the virus. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021) (in denying compassionate release, the district judge "permissibly focused on the prison's relative success [] in containing COVID-19"). To be sure, COVID-19 continues to present risks to both those inside and outside prison, but the court does not find that defendant's particular risks are unusually high given his good health and his fully-vaccinated status.

As noted above, the COVID-19 argument is the predominant argument advanced by defendant. However, in his first amendment, which is the two-page filling referring to an expungement of a 1996 drug conviction, he briefly complains about the enhancement of his sentence as a career offender based on that conviction. [107 at 2.] The government argues that this argument, which is not especially well developed in any event, also cannot constitute an extraordinary and compelling reason because, if it were accepted, it would "erode the limits on postconviction relief in 28 U.S.C. § 2255." *United States v. Wentzel*, 858 Fed. Appx. 943, 945 (7th Cir. 2021); *see also United States v. Arojojoye*, 806 Fed. Appx. 475, 477-78 (7th Cir. 2020) (describing the defendant's argument that he should be permitted to request compassionate release based on a sentencing disparity as a "dubious" argument, one not contemplated by the First Step Act). The government further notes that the Seventh Circuit recently observed, in *United States v. Thacker*, 4 F. 4th 569 (7th Cir. 2021), that arguments to the effect that the prescribed sentence was "too long" are arguments that "cannot supply an extraordinary and compelling reason to reduce a lawful sentence," although such arguments may be considered if a separate extraordinary and compelling reason is first established. *Id.* at 574. Relying on this language and other Seventh Circuit cases, the government argues that defendant's argument about his career offender status also should not be accepted as an extraordinary and compelling reason.

Although the court finds the government's arguments described in the previous paragraph to be persuasive, the court need not further consider this issue here because it finds that, even if it were to accept either of the above two arguments as constituting a valid extraordinary and compelling reason, it would not grant compassionate release based on the sentencing factors. A reduction in the term of imprisonment for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i) further requires the court to consider all the factors set forth in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense, the history and character of the defendant, the need for the sentence to reflect the seriousness of the offense, promote the respect for the law, provide just punishment, afford adequate deterrence to criminal

---

[3] In this court's experience, the overwhelming majority of prisoners seeking compassionate release based on COVID-19 concerns have also alleged that they suffer form an additional health problem (*e.g.* diabetes) that puts them at a higher risk than the average person for getting complications from the virus.

conduct, protect the public, and provide the defendant with needed training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a).

After balancing these factors, the court finds that they weigh against granting the motion. First, as to the nature and circumstances of the offenses, the court agrees with the government that defendant's offenses (possession with intent to distribute cocaine base/crack cocaine and possession of a firearm by a felon) were very serious. As the government also notes, defendant has admitted that he possessed with the intent to deliver over 537.40 grams of crack cocaine. [113 at 14.] Regarding defendant's history and characteristics, the government notes that defendant's criminal history is lengthy, and includes multiple drug-trafficking convictions suggesting that he poses a substantial risk of recidivism. Further, during his time in prison, he has been disciplined for insolence and possession of contraband. At the same time, the court has also considered the additional mitigating facts and arguments set forth in defendant's multiple filings, which include among other things the following: defendant has taken 45 courses while in prison, including an accounting class, a Microsoft PowerPoint class, a landscape management class, and many others; he has completed two college correspondence courses, one in paralegal studies and one relating to being a physical trainer; and he has received good job performance reviews for his work as a unit orderly. *Id.* at 9. The court commends defendant in his efforts to improve himself and to prepare for his release. Defendant has also acknowledged that, during his seventeen years of incarceration, he has received six incident reports and that he was "severely punished" for these infractions. *Id.* However, on balance, the court finds that these facts do not materially change the core underlying concerns about the seriousness of the offense and the prior pattern of criminal conduct. In sum, after balancing all the relevant § 3553(a) factors, the court finds that defendant has not made a sufficient showing for compassionate release.

Date: 11/08/2021                                ENTER:

                                                _____
                                                United States District Court Judge

                                                                Notices mailed by Judicial Staff. (LC)